## The Grand Rapids Hydraulic Company v. The American Fire Insurance Company.

*Fire insurance—Conditions of policy—Use of oil—Increased risk.*

1. Where the use of a certain kind of fuel is excepted from the prohibitions of a fire insurance policy, the usual and ordinary method of such use is included in the exception.
2. A reduced oil, the residuum from the distillation of petroleum, and less inflammable than current kerosene oil of the standard required by the Michigan State law, comes within the products of petroleum expressly excepted from the prohibitions of the Michigan standard fire insurance policy.

Error to Kent. (Grove, J.) Argued October 7, 1892. Decided November 4, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Norris & Norris,* for appellant.

*Blair, Kingsley & Kleinhans,* for plaintiff.

McGRATH, C. J.   This is an action upon a fire insurance policy upon plaintiff's "engines, boilers, pumps, and connections, including smokestack, fire fronts, breeching, and tools, all while contained in frame pump house." It is a Michigan standard policy, and contains the following provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if * * * the hazard be increased by any means within the control or knowledge of the insured; * * * or if illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein; or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above-described premises benzine, benzole, * * * gasoline, * * * naphtha, * * * or petroleum, or any of its products, of greater inflammability than kerosene oil of the United States standard (which last may be used for lights, and kept for sale, according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by day-light, or at a distance of not less than ten feet from artificial light)."

This case turns upon the construction of these provisions. The policy was dated November 29, 1890, at which time plaintiff was using coal as fuel under its boilers. In May, 1891, plaintiff began the use of fuel oil, or "reduced oil," which is the residuum from the distillation of petroleum. In the process of distillation the lighter parts of the crude petroleum, such as naphtha and illuminating oils, are eliminated. The chemists by whom the oil used was subjected to an analytical examination testified that—

· "This oil has a flash point 52 degrees safer than kerosene oil, standard of the Michigan State law. It is much safer, much less combustible, and much less explosive by formation of combustible vapor, than current kerosene oil which conforms to legal standards in any part of the United

States, by laws of the several states and of the general government. In gravity it is 15 commercial degrees, or 0.077 of the water unit, heavier than the common kerosene of safe, legal grades in the average gravity of such grades."

Other testimony tended to show that it was less inflammable than crude petroleum, and less so than kerosene. This testimony is undisputed. The reduced oil was fed to the fire-box by its own and gravity pressure from an 80-gallon iron tank, and was sprayed within the fire-box by superheated steam. It is claimed, too, that coal was being used under one of the boilers, and reduced oil under another, and that both breechings led into one smokestack. The fire caught in the stack, and was simply a burn-out, and the only explanation given is that the soot caught fire.

The court instructed the jury that the policy did not prohibit the use of reduced oil, and that the only question for their consideration was as to whether the use and the manner of the use increased the hazard, and that, if they found that the use and the manner of the use materially increased the hazard, their verdict should be for the defendant; otherwise they should find a verdict for plaintiff. The defendant has nothing to complain of in this instruction. The reduced oil used, under the testimony, came within the products of petroleum expressly excepted from the prohibitions contained in the policy. The use being excepted, the usual and ordinary methods of such use were included in the exception.

It is suggested that, while the policy refers to a United States standard, there is no known United States standard, and that the Michigan standard has been reduced, and was reduced at the time of the trial; but the testimony is that the reduced oil used was much less explosive and much less combustible than current kerosene oil which conforms to legal standards in any part of the United States, by

laws of the several states and of the general government.

Objection is made to the use by the court of the language "materially increased." "Materially" is defined as "substantially, essentially, really." The objection is without force.

The case was submitted to the jury upon the theory most favorable to defendant, and the judgment is affirmed.

The other Justices concurred.